VÍCTOR COLÓN PÉREZ, recurrente, *v.* ALCALDE DEL MUNICIPIO DE CEIBA y JUNTA DE APELACIONES DEL SISTEMA DE ADMINISTRACIÓN DE PERSONAL, recurridos.

*Número:* R-81-77     *Resuelto:* 12 de mayo de 1982

*Wilfredo Rivera Figueroa, Samuel Ríos López, Sandra I. Peña Osorio* de Servicios Legales de P.R., abogados del recurrente; *Eliezer Aldarondo Ortiz*, abogado del recurrido Municipio de Ceiba.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Efectivo el 2 de octubre de 1978 Víctor Colón Pérez fue nombrado por el Alcalde del Municipio de Ceiba Supervisor de Equipo Pesado como "empleado de confianza".[1] Su superior inmediato era el Director de Obras Públicas Municipal, y sus tareas consistían en preparar informes, solicitar reparación de equipo averiado, asignar las labores a los operadores de máquinas, y operar personalmente las mismas en ausencia de otro operador. El 28 de febrero de 1980 fue cesanteado. No conforme apeló a la Junta de Apelaciones del Sistema de Administración de Personal (JASAP), la cual desestimó ese recurso bajo la tesis de que siendo de confianza su nombramiento —correspondía al plan de puestos de confianza consignado en la ordenanza

---

[1] El formulario OP-11 refleja que el Alcalde suscribió el nombramiento el 2 de octubre de 1978, y que Colón Pérez juró fidelidad y tomó posesión del cargo el 25 de mayo de 1979. No hay explicación para esta tardanza.

Núm. 38, serie 1976-77 del 29 de abril de 1977— carecía de jurisdicción en virtud de nuestra decisión en *Pou Estape* v. *F.S.E.*, 108 D.P.R. 336 (1979). Dicho foro administrativo adujo además que Colón Pérez tenía pleno conocimiento de esa clasificación e ingresó al servicio sin observarse las exigencias de la Ley, esto es, sin selección a través del proceso de libre competencia y sin sujeción al trámite de aprobación satisfactoria de un período probatorio.

En revisión judicial el Tribunal Superior, Sala de Humacao, confirmó la resolución de la JASAP. El recurrente acudió ante nos, y concedimos al municipio término para que nos mostrara causa por la cual no deberíamos revocar esos dictámenes. Resolvemos.

## I

Se imponen unas consideraciones preliminares. Primero, hemos de aclarar que no existe alegación ni indicio alguno sobre motivaciones o discrimen político-partidista en la acción municipal. Segundo, el pronunciamiento expuesto en *Pou Estape*, supra, debe estimarse en el contexto de los hechos allí presentes. Pou Estape ocupaba un cargo dentro del Servicio Exento, en virtud de la Ley de Personal entonces vigente —Núm. 345 de 12 de mayo de 1947 según enmendada. Resolvimos que bajo ese estado de derecho la JASAP carecía de jurisdicción para entender en el asunto, enfatizando que la "Junta no tenía ni tiene jurisdicción para entender en casos de servicio exento gobernados por la anterior Ley de Personal. . .". *Pou Estape*, supra, pág. 341. Y tercero, distinto al caso *Pou Estape*, el nombramiento y despido del recurrente Colón Pérez ocurre al amparo de la Ley de Personal actual —Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 *et seq.*).

Hechas estas aclaraciones, concentrémosnos en la solución del recurso. Los autos reflejan que las tareas asignadas al recurrente Colón Pérez aparentemente distan mucho

de ser las previstas para un cargo de confianza. La vigente Ley de Personal establece dos clasificaciones de puestos, a saber, Servicio de Carrera y Servicio de Confianza. Sobre esta última categoría, el Art. 5.10 contiene los criterios que sirven para evaluarla y consigna un sinnúmero de puestos, que de jure, (²) son de confianza y de "libre selección y remoción". Reza:

Empleados de confianza

*Los empleados de confianza son aquellos que intervienen o colaboran sustancialmente en la formulación de la política pública, que asesoran directamente o que prestan servicios directos al jefe de la agencia, tales como:*

(1) Los funcionarios nombrados por el Gobernador, sus secretarias personales y conductores de vehículos; así como sus ayudantes ejecutivos y administrativos que les respondan directamente.

(2) Los Jefes de Agencias, sus secretarias personales y conductores de vehículos; así como sus ayudantes ejecutivos y administrativos que les respondan directamente.

(3) Los Subjefes de Agencias, sus secretarias personales y conductores de vehículos.

(4) Los directores regionales de agencias.

(5) Las secretarias personales y los conductores de vehículos de los funcionarios seleccionados por elección popular; así como los ayudantes que respondan directamente a dichos funcionarios.

(6) Los miembros de juntas o comisiones permanentes nombrados por el Gobernador y sus respectivos secretarios personales.

(7) Los miembros y el personal de juntas o comisiones nombradas por el Gobernador que tengan un período determinado de vigencia.

(²) Obviamente esta enumeración es ejemplarizante. Las palabras claves que la preceden "tales como" son indicativas de una intención legislativa de concebir esas posiciones bajo un prisma de *numerus apertus*.

(8) El personal de las oficinas de ex-gobernadores de Puerto Rico. (Énfasis suplido.) 3 L.P.R.A. sec. 1350.

Además de esos puestos, la Ley autoriza la aprobación de puestos de confianza a base de lo siguiente:

(1) Cada agencia deberá presentar, *para la aprobación* de la Oficina, un plan que contenga los puestos de confianza con que interese funcionar. *En el caso de los municipios, la Asamblea Municipal seguirá la ordenanza o resolución aprobando el plan sometido por el Alcalde y la remitirá a la Oficina a los efectos solamente de ésta cotejar que se haya cumplido con las disposiciones de la sec. 1350 de este título.*

(2) La Oficina sólo intervendrá para determinar si el plan sobre puestos de confianza cumple con las disposiciones de la sec. 1350 de este título.

(3) La Oficina no podrá aprobar más de 25 puestos de confianza para una misma agencia, excepto para aquéllas por cuyo tamaño, complejidad u organización requieran un número mayor de puestos de confianza para el funcionamiento eficiente.

(4) Toda agencia interesada en aumentar o disminuir el número de puestos de confianza someterá el plan a la Oficina, que sólo intervendrá a los fines de ver que se cumpla con los criterios que establece la sec. 1350 de este título. (Énfasis suplido.) 3 L.P.R.A. sec. 1351.

■ Se advierte, pues, que distinto a las agencias en que el plan sobre puestos de confianza deberá ser *aprobado* por la Oficina Central de Personal, el deber de los municipios es remitir a dicha Oficina el plan, con el propósito de que ésta coteje, esto es, confronte si el mismo cumple o no con lo dispuesto en cuanto a los dos criterios visualizados: (1) *funciones* (intervención y formulación sustancial en la política pública); o (2) *relación* (la prestación de servicios directos al jefe de la agencia).

Nada hay en el estatuto —sería ello un contrasentido— que nos permita sostener la teoría de que la autoridad municipal tiene discreción absoluta para clasificar arbitrariamente a sus empleados. No es la etiqueta ni la

descripción escrita de los deberes lo determinante, sino la naturaleza real de las funciones —en atención al conjunto de esos deberes y responsabilidades, o la relación con el jefe de la agencia. Es, pues, comprensible que la intervención de la Oficina Central de Personal con los municipios en este aspecto trascienda el simple cotejo automático. Su participación es deliberativa, no meramente informativa. Conlleva verificar que la ordenanza o resolución municipal que aprueba los puestos de confianza responda en esencia a los parámetros y criterios fijados en la sección antes transcrita. Lo contrario propiciaría que se desnaturalizaran los loables propósitos que inspiraron la Ley, amén de atentar contra el desarrollo racional, uniforme y pleno del sistema de méritos en todos los sectores del servicio público del país, incluso las municipalidades.

■ A la luz de las pautas y criterios legales expuestos nos resulta difícil concluir que las funciones del recurrente Colón Reyes pudieran válidamente servir para clasificar el puesto como de confianza. Todo, tanto en su dimensión funcional como en la ausencia de relación directa con el alcalde, tiende a indicar lo contrario. En consecuencia, para fines argumentativos y dispositivos del recurso habremos de presumir que sus servicios correspondían a un puesto clasificado en el servicio de carrera.

## II

■ Bajo esta premisa, Colón Pérez aduce ser acreedor a la protección y beneficios de un empleado de carrera y, por ende, que no podía ser despedido sumariamente sin la formulación previa de cargos y celebración de vista. Por otro lado, el municipio recurrido persuasivamente expone que Colón Pérez "no compitió con otros aspirantes para la plaza de supervisor de equipo pesado. . . . Tampoco tomó examen de clase alguna para la misma, ni su nombre pasó a formar parte de un registro de elegibles ni aprobó período probatorio alguno". Nos argumenta que el "em-

pleado que pasa por el procedimiento anteriormente relatado, que prueba su idoneidad a través de un período probatorio, pasa a ser un empleado regular de carrera, sec. 4.3(10) de la Ley de Personal, 3 L.P.R.A. sec. 1333(10). Son estos empleados de carrera a quienes resultan de aplicación las garantías sobre retención consagradas en la sec. 4.6 de la Ley de Personal, 3 L.P.R.A. 1336, y en la sec. 9 del Reglamento de Áreas Esenciales. El señor Colón Pérez tenía conocimiento que su clasificación como empleado era de confianza. En su consecuencia, sabía o debía saber que habiendo sido seleccionado libremente de igual forma podía ser separado, sec. 5.10 de la Ley de Personal, 3 L.P.R.A. sec. 1350". Termina su disertación proponiéndonos que a "dicho empleado no se le consagraba interés propietario alguno ni por ley, ni por reglamento, ni por circunstancia de clase alguna . . .".

### III

■ ¿Qué resultado se impone ante este cuadro fáctico y trasfondo legal? A poco que reflexionemos notamos que la solución no puede depender del reclamo de ilegalidad en la clasificación. En última instancia a ello se reduce la posición del recurrente. Hemos de rechazarla. De pobre valor decisorio, moral y jurídico, sería pautar un remedio erigido sobre la base de la ilegalidad e inobservancia de una ley. De aplicación al caso de autos es el principio elemental, pero rector, de que "[s]on nulos los actos ejecutados contra lo dispuesto en la ley, salvo los casos en que la misma ley ordene su validez". Art. 4, Código Civil, 31 L.P.R.A. sec. 4. Máxime cuando ello atenta contra los valores de orden público plasmados en la Ley de Personal. No cabe extender la protección de la clasificación como empleado de carrera a quien logró tal puesto a base de criterios ajenos a esa categoría. "La igual protección de las leyes no implica igual protección de la violación de las leyes. . . . En el supuesto de que [el municipio] hubiese

cometido algún error en la aplicación de la ley, esa actuación no sería válida." *Del Rey* v. *J.A.C.L.*, 107 D.P.R. 348, 355 (1978).

Resumiendo, aun bajo la hipótesis de que las funciones que desempeñaba el recurrente Colón Pérez no correspondieran a la clasificación de confianza, y sí propiamente a las que nutren un cargo de carrera, ello no sería motivo para un imprimátur judicial al respecto. Tal condición, por ser producto de una actuación contraria a la ley, es nula. No puede ampararse en esa tesis antinómica para lograr esos efectos jurídicos.

A tono con lo expuesto, aunque por distintos fundamentos, *se dictará sentencia en que se confirme la del Tribunal Superior, Sala de San Juan, que sostuvo el dictamen de la JASAP en contra del recurrente Víctor Colón Pérez.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Díaz Cruz concurren en el resultado sin opinión.