EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Maribel Pérez López et al.<br><br>Recurridos<br><br>v.<br><br>Corporación del Fondo del Seguro del Estado<br><br>Peticionario | Certiorari<br><br>2015 TSPR 165<br><br>194 DPR ____ |

Número del Caso: CC-2014-462

Fecha: 11 de diciembre de 2015

Tribunal de Apelaciones:

      Región Judicial de San Juan

Abogado del Peticionario:

      Lcdo. Juan M. Frontera Suau
      Lcdo. Carlos J. Jiménez Torres

Abogado de la Parte Recurrida:

      Lcdo. Ramón Rodríguez Meléndez

Materia: Derecho Laboral – Nulidad de pasos por mérito por nulidad de nombramiento.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Maribel Pérez López et al.

    Recurridos

    v.

Corporación del Fondo del Seguro del Estado

    Peticionario

*Certiorari*

CC-2014-0462

**Opinión del Tribunal emitida por el Juez Asociado señor Rivera García**

En San Juan, Puerto Rico, 11 de diciembre de 2015.

Un empleado de la Corporación del Fondo del Seguro del Estado (CFSE) reinstalado en su puesto unionado luego de que su nombramiento gerencial fuera declarado nulo, ¿tiene derecho a conservar los pasos por mérito que obtuvo mientras ejercía el puesto gerencial anulado? Hoy contestamos esta interrogante en la negativa. Como consecuencia, revocamos la determinación recurrida emitida por el Tribunal de Apelaciones.

A continuación abundamos un poco más sobre los antecedentes fácticos y procesales que originaron la referida controversia.

I

La parte demandante se compone de un grupo de empleados unionados de la CFSE que fueron ascendidos a puestos gerenciales vía el mecanismo de convocatoria interna entre los años 2001 y 2008. Mientras ocupaban su puesto gerencial, estos fueron evaluados conforme al Sistema de Evaluación y Motivación de Recursos Humanos de la CFSE. Como resultado de tales evaluaciones, recibieron varios pasos por méritos que representaron un aumento salarial.

Posteriormente, y luego de los trámites administrativos correspondientes, la entonces Administradora de la CFSE les notificó que sus nombramientos a puestos gerenciales eran nulos, ya que habían sido obtenidos ilegalmente mediante unas convocatorias internas que no cumplían con los requisitos establecidos en el Reglamento de Personal de la CFSE, ni con el derecho vigente. Como consecuencia, los empleados unionados fueron reinstalados en sus respectivos puestos de carrera y se les acreditaron los aumentos salariales correspondientes a este puesto, pero

no los pasos por mérito recibidos mientras ocupaban el puesto gerencial anulado.

Inconformes con esta determinación, los empleados acudieron ante la Junta de Apelaciones de la CFSE (Junta de Apelaciones). En lo que respecta a la nulidad de los nombramientos gerenciales, el 14 de abril de 2011 la Junta de Apelaciones confirmó la determinación de la entonces administradora de la CFSE. Según concluyó, la acción de anular los nombramientos de los empleados demandantes fue correcta en derecho porque las convocatorias internas celebradas no cumplieron con las disposiciones reglamentarias de la agencia.

En cuanto a la controversia relacionada a los pasos por méritos, el organismo apelativo de la CFSE optó por emitir una determinación por separado el 6 de julio de 2011. En esta, la Junta de Apelaciones determinó que los empleados demandantes sí tenían derecho a retener los pasos por méritos obtenidos mientras ejercían sus funciones gerenciales. Esto porque, según explicó, "[e]l aumento salarial recibido como paso por mérito ingresó y formó parte del patrimonio del empleado, surgiendo de ahí en adelante un **derecho a continuar recibiéndolo** salvo que sea privado por justa causa y cumpliéndose el

debido proceso de ley".[1] Sobre este particular, la Junta

de Apelaciones razonó lo siguiente:

> En los casos de epígrafe no está en controversia el que los apelantes ocupaban puestos unionados y fueron seleccionados para puestos gerenciales a través de convocatorias internas. Durante el tiempo que ocuparon los puestos gerenciales, se le concedieron aumentos de sueldo por méritos personales (pasos por mérito). Estos aumentos eran un **reconocimiento al desempeño**, liderato y aportaciones hechas por el empleado, así como la asistencia y puntualidad demostrada. Para ello, se sometieron a un proceso de evaluación, el cual estaba basado en los datos significativos registrados por el empleado y el supervisor.
>
> Al ser reinstalados a puestos unionados, los aumentos de salario ganados por los apelantes a través de pasos por méritos les fueron eliminados bajo la premisa [de] que los empleados unionados no reciben pasos por mérito y sí aumentos por años de servicio. Estos últimos se le extienden a todos los empleados unionados sin consideración al desempeño.
>
> Es de notar que los empleados gerenciales, además de pasos por mérito, pueden recibir aumentos generales sin necesidad de pasar por un proceso de evaluación.
>
> Debemos resolver si un empleado gerencial tiene derecho a retener los aumentos por mérito al pasar a un puesto unionado. Concluimos que tales aumentos son un derecho adquirido que el empleado retiene y lleva consigo a cualquier puesto al que sea asignado.[2]

Más adelante, la Junta añadió que,

> [l]os hechos en estas apelaciones claramente establecen los elementos necesarios para configurar un **derecho adquirido** sobre el cual se tiene un interés propietario. Se trata de un

---

[1] (Énfasis en el original). Véase, Apéndice de la Petición de *certiorari*, *Decisión pasos por mérito*, pág. 228.

[2] (Énfasis en el original). Íd.

hecho consumado (otorgación de aumentos salariales) en el que las partes descansaron en el estado de derecho que regía al momento de concederse y cumplirse determinado desempeño.[3]

En desacuerdo con sus otros dos compañeros, el representante de la Administración en la Junta de Apelaciones emitió una opinión disidente en la que expresó lo siguiente respecto a los pasos por méritos:

> [E]ntiendo que los hechos de las apelaciones, no configuraban un derecho adquirido por parte de los apelantes a los pasos por mérito, toda vez que su obtención estuvo configurada durante la incumbencia de un puesto gerencial cuyo nombramiento fue ilegal, al haberse convocado vía convocatoria interna sin que mediaran las excepciones, el análisis técnico ni el requisito de publicidad a empleados y ex empleados de la CFSE, requeridos por el Reglamento de Empleados Gerenciales de Carrera de la CFSE.[4]

Toda vez que la Junta de Apelaciones emitió dos decisiones por separado, el proceso de revisión judicial también se dividió en dos procedimientos aparte. Por un lado, en lo que concierne a la determinación de nulidad de los nombramientos, los empleados demandantes acudieron ante el Tribunal de Apelaciones y este revocó la determinación de la Junta.[5] No obstante, la decisión de la Junta fue posteriormente reinstalada por este Tribunal mediante la opinión emitida en González Segarra

---

[3] (Énfasis en el original). Íd., pág. 229.

[4] Íd., *Opinión disidente*, pág. 236.

[5] Véase Sentencia del Tribunal de Apelaciones en González Segarra v. CFSE, Casos Núm. KLRA201100611, KLRA201100616, KLRA201100619, KLRA20110668 (30 de septiembre de 2011).

et al. v. C.F.S.E., 188 DPR 252 (2013). En aquella ocasión, determinamos que los nombramientos a puestos gerenciales obtenidos por los empleados demandantes eran nulos porque el mecanismo utilizado violaba los reglamentos de la CFSE y las leyes laborales existentes. Al respecto, específicamente expresamos lo siguiente:

> Así pues, en conclusión, los nombramientos de los empleados recurridos efectuado mediante convocatoria interna, violaron el Reglamento de Personal de la CFSE y fueron contrarios al principio de mérito. No se demostró que había que apartarse del mecanismo de competencia abierta, garantía de que los nombramientos y ascensos se hacen por mérito y no por favoritismo. Puestos como el de secretaria, oficial administrativo y supervisor de limpieza no son posiciones de reclutamiento difícil ni presentan una particularidad que requiera limitar la competencia. El expediente no lo justificó. Por todo ello, abusaron de su discreción los anteriores administradores al permitir y validar la concesión de ascensos mediante convocatorias internas que no se justificaron.[6]

Por otro lado, la CFSE acudió al Tribunal de Apelaciones mediante otro recurso en el que solicitó la revisión de la determinación de la Junta de sostener los pasos por méritos de los empleados demandantes. Evaluado el caso, el Foro Apelativo Intermedio revocó la decisión recurrida porque entendió que la Junta de Apelaciones carecía "de jurisdicción sobre la materia para adjudicar que a los recurridos, como empleados unionados, le asiste el derecho a mantener pasos por

---

[6] González Segarra v. CFSE, supra, págs. 298-299.

mérito".[7] Insatisfechos con esta sentencia, los empleados demandantes acudieron ante nos mediante un recurso de *certiorari*.

Luego de expedir y evaluar el recurso presentado, emitimos la opinión <u>Pérez López v. C.F.S.E.</u>, 189 DPR 877 (2013), en la que resolvimos únicamente que la Junta de Apelaciones sí tenía jurisdicción para atender la reclamación de los empleados demandantes respecto a los pasos por mérito. Así las cosas, revocamos la determinación del Tribunal de Apelaciones y devolvimos el caso a ese foro para que resolviera en los méritos si los empleados afectados ostentaban el derecho de mantener los aumentos por mérito obtenidos mientras ejercieron los puestos gerenciales declarados nulos.

Recibido el caso, el 24 de febrero de 2014 el Foro Apelativo Intermedio emitió una sentencia en los méritos mediante la cual confirmó la decisión emitida por la Junta de Apelaciones. De esta manera, el Tribunal concluyó que los empleados sí tenían derecho a retener los pasos por mérito recibidos mientras ocupaban los puestos gerenciales. Sobre el particular, y *en total ausencia de una discusión o siquiera mención* de nuestra determinación en <u>González Segarra v. CFSE</u>, supra, el Tribunal de Apelaciones razonó lo siguiente:

---

[7] Véase, Apéndice de la Petición de *certiorari*, *Sentencia*, pág. 156.

[D]e un examen de la normativa antes expuesta es de notar que los empleados gerenciales de la CFSE, además de pasos por mérito también pueden recibir aumentos generales sin necesidad de pasar por un proceso de evaluación. Los pasos por mérito no son discrecionales y son ganados por el desempeño del año anterior, pudiendo recibir otros aumentos salariales que la CFSE discrecionalmente pueda otorgar. En ese contexto y bajo el estado de derecho vigente al momento de la concesión de los aumentos por mérito a los recurridos, un empleado gerencial de la CFSE tiene derecho a retener los aumentos por mérito al pasar a un puesto unionado. Más aún cuando dichos pasos por mérito fueron otorgados mediante el Sistema Formal de evaluación adoptado por la CFSE el 13 de mayo de 1996. Ello se traduce en que los pasos por mérito no pueden ser reducidos o eliminados porque se hayan otorgado otros aumentos de salario.

En el presente caso los aumentos salariales recibidos como pasos por mérito ingresaron y formaron parte del patrimonio de los empleados recurridos. Por tanto, a partir de ese momento surgió un derecho a continuar recibiéndolo. Los aumentos salariales obtenidos en el puesto gerencial, constituyen un derecho adquirido que los empleados recurridos retienen y llevan consigo a cualquier puesto asignado, incluyendo a un puesto unionado.[8]

Inconforme con ello, la CFSE presentó una moción de reconsideración, pero la misma fue denegada por el Tribunal de Apelaciones.[9] Así las cosas, la CFSE acude ante nos mediante una petición de *certiorari*. En esta nos señala que el Foro Apelativo erró "al determinar que un empleado que desempeña un puesto en el gobierno a base de un nombramiento radicalmente nulo y en oposición al principio de mérito adquiere, sin embargo, un derecho

---

[8] Véase, Apéndice de la Petición de *certiorari*, *Sentencia*, págs. 65-66.

[9] Íd., *Moción de reconsideración*, págs. 23-29; *Resolución*, pág. 5.

sobre el valor dinerario de los pasos por mérito que acumule mientras ostentaba el cargo ilegalmente".[10] El 31 de octubre de 2014 expedimos el auto y, posteriormente, las partes presentaron sus correspondientes alegatos.

Por una parte, la CFSE sostiene que los empleados demandantes no tienen ningún derecho adquirido, ni interés propietario o expectativa de continuidad sobre unos pasos por mérito que fueron obtenidos mientras ocupaban un puesto ilegalmente.[11] Esto porque, según expone, los pasos por méritos dependían de un nombramiento que en última instancia fue declarado nulo, por lo que los negocios jurídicos subordinados o contingentes a ese hecho son también nulos, inoficiosos e inexistentes.[12] En ese sentido, la CFSE arguye que los empleados únicamente tienen derecho a los aumentos salariales por años de servicio que hubiesen obtenido de haber permanecido en sus puestos unionados.[13]

Por su parte, los empleados demandantes sostienen, en esencia, que "[l]os aumentos por mérito y evaluación son derechos adquiridos que forman parte de su patrimonio individual en su relación contractual laboral

---

[10] Petición de *certiorari*, pág. 8.

[11] Véase, *Alegato de la parte peticionaria*, pág. 15.

[12] Íd., pág. 10.

[13] Íd., pág. 11.

con la CFSE".[14] Según sostienen, se trata de derechos adquiridos que entraron a sus respectivos patrimonios en las fechas en que aprobaron sus evaluaciones y les fueron notificados por el Administrador de turno estableciendo la fecha y cuantía del aumento".[15] Por lo que, la anulación de sus nombramientos gerenciales no incide sobre su derecho a retener los respectivos aumentos salariales.[16]

Con el beneficio de la comparecencia y la posición de ambas partes, pasamos a exponer el marco legal aplicable a la controversia ante nuestra consideración.

## II

*Primero*, debemos tener claro qué y de dónde surge lo que los empleados demandantes están reclamando como un derecho adquirido. Es decir, ¿a qué se refieren específicamente respecto a los pasos por mérito que recibieron? *Segundo*, debemos consignar, muy brevemente, lo que corresponde un derecho adquirido, conforme a nuestras expresiones anteriores. Esto a fin de evaluar si procede un planteamiento de derecho adquirido sobre los pasos por méritos recibidos en el contexto muy particular de la nulidad del nombramiento gerencial.

---

[14] Véase, *Alegato de oposición a solicitud de certiorari*, pág. 11.

[15] Íd., pág. 10.

[16] Íd.

A. **Sistema de evaluación de la CFSE**

La Ley Núm. 45 de 18 de abril de 1935, según enmendada, encomendó al Administrador de la CFSE la elaboración de un conjunto de normas para el sistema de personal que se fundamentara en el principio de mérito.[17] Entre los reglamentos adoptados conforme a esa encomienda, hallamos que el 31 de mayo de 1996 la CFSE adoptó un "Sistema de Evaluación y Motivación de Recursos Humanos, Pasos por Mérito, Personal Gerencial de Carrera de la CFSE" (Sistema de Evaluación) basado en criterios de productividad, eficiencia, orden y disciplina. **Este sistema evaluativo está disponible <u>exclusivamente</u> para los <u>empleados gerenciales</u> de carrera de la CFSE.**

Para recibir pasos por méritos basados en el referido sistema, el empleado gerencial debe completar durante el mes de enero del año que interesa ser evaluado una "Solicitud de pasos por mérito" en el área de recursos humanos de la CFSE.[18] Para ser considerado, deberá cumplir los requisitos siguientes: (1) poseer tres años de servicio como empleado regular de carrera en la CFSE y; (2) poseer un año de servicio ininterrumpido como empleado regular de carrera en la

---

[17] Véase, Art. 1b-4 de la Ley Núm. 45, <u>supra</u>, Ley de Sistema de Compensaciones por Accidentes del Trabajo. (11 LPRA sec. 1b-4).

[18] Véase, Apéndice de la Petición de *certiorari*, Sistema de Evaluación y Motivación de Recursos Humanos, Pasos por Mérito, Personal Gerencial de Carrera de la CFSE, Sección II, inciso (A), pág. 261.

CFSE.[19] Para efectos de constatar tales requisitos, el sistema evaluativo dispone que se tomaran en cuenta los doce meses que anteceden a la solicitud del paso.[20]

Requerida la evaluación y cumplido con los requisitos reseñados, el empleado gerencial se somete a un ciclo de evaluación de doce meses que se divide en tres fases que incluyen varias reuniones entre el supervisor y el empleado, así como observancia del desempeño de este último en la ejecución de sus tareas y su conducta como servidor público.[21] Una vez completado el ciclo de evaluación, el empleado debe obtener una puntuación en los niveles de superior o excelente para la concesión de un máximo de dos pasos.[22] Así, por ejemplo, si el empleado obtiene una calificación de "superior", se le concederá automáticamente un paso en la escala de retribución y dos pasos cuando obtengan una calificación de "excelente".[23]

---

[19] Íd., Sección II, incisos (B) y (C), pág. 262.

[20] Íd., Sección II, inciso (C), pág. 262. Este aclara que "[c]ualquier tipo de licencia o combinación de éstas que se prolongue por más de treinta (30) días laborables consecutivos al año se considera para efecto de este beneficio interrupción del servicio, con excepción de las siguientes licencias: Tiempo Compensatorio, Licencia Funeral, Día de Cumpleaños, Licencia Militar, y Licencia de Maternidad y Licencia de Vacaciones Regulares automatizadas mediante el Formulario FSE-123". Íd., Sección II, inciso (C), sub-inciso 1, pág. 262.

[21] Íd., Sección IV, inciso (G), sub-inciso 1, págs. 274-278.

[22] Íd., Sección II, inciso (D), sub-incisos 1-3, pág. 262.

[23] Íd., Sección III, inciso (D), pág. 264.

B. **Irretroactividad de las normas jurídicas y los derechos adquiridos**

Una norma jurídica bien podría aplicarse en el tiempo de manera prospectiva a situaciones que ocurran posterior a su adopción o bien podría aplicarse retroactivamente a hechos ocurridos o consumados previo a la existencia misma de la norma.[24] Sobre esta última posibilidad, el Art. 3 del Código Civil de Puerto Rico establece, (1) que las leyes no pueden tener un efecto retroactivo, si no dispusieren expresamente lo contrario y (2) que, de tenerlo, en ningún caso ese efecto retroactivo podría perjudicar los derechos adquiridos al amparo de una legislación anterior.[25] Así, se trata de una norma que promueve la seguridad y confianza jurídica al respetar aquellos derechos **legítimamente** adquiridos.

Conforme a ello, hemos expresado que "la teoría de los derechos adquiridos prohíbe la aplicación retroactiva de una ley cuando esto afecte **relaciones jurídicas existentes** antes de la vigencia de la nueva ley, que nacieron fundamentándose en la legislación anterior".[26] Ahora bien, no toda situación jurídica que surge al amparo de una ley anterior representa un interés propietario que dé paso al reconocimiento de un

---

[24] Véase, F. Bonet Ramón, *Compendio de Derecho Civil*, Madrid, Ed. Rev. Der. Privado, 1959, T. 1, págs. 199-200.

[25] Art. 3 del Código Civil de Puerto Rico. (31 LPRA sec. 3).

[26] *Consejo Titulares v. Williams Hospitality*, 168 DPR 101, 110 (2006).

derecho adquirido. Así, hemos aclarado, que los derechos adquiridos son "aquellos que se encuentran definitivamente incorporados al patrimonio de una persona".[27]

C. **Efectos de la nulidad de la transacción de personal**

Una vez expuesto cómo los empleados demandantes obtuvieron los pasos por méritos reclamados y los contornos más básicos sobre la doctrina de derechos adquiridos, debemos dilucidar lo siguiente: ¿qué sucede cuando la reclamación de un beneficio como un presunto derecho adquirido se fundamenta en una acción que fue declarada nula? Nótese que los empleados demandantes sostienen que la anulación de sus nombramientos gerenciales no incide sobre su derecho a retener los pasos por mérito obtenidos mientras ocupaban la posición gerencial.[28] En ese sentido, debemos dilucidar si procede que los pasos por mérito subsistan a pesar de que el nombramiento gerencial mediante el cual obtuvieron ese beneficio fue declarado nulo.

---

[27] Véase, e.g., Hernández, Romero v. Pol. de P.R., 177 DPR 121, 145-146 (2009) y Consejo Titulares v. Williams Hospitality, 168 DPR 101, 109 (2006), citando a J.M. Suárez Collía, El principio de irretroactividad de las normas jurídicas, 2da ed., rev., Madrid, Actas, 1994, pág. 55; o a F. Gómez de Liaño, Diccionario Jurídico, Salamanca, Gráficas Cervantes, 1979, pág. 113. Véase, además, L. Díez-Picazo y A. Gullón Ballesteros, Sistema de Derecho Civil, 9na ed., Madrid, Ed. Tecnos, 1997, Vol. I, pág. 108; J. Castán Tobeñas, Derecho Civil español, común y foral, 12ma ed., Madrid, Ed. Reus, 1982, T. I, Vol. I, pág. 616.

[28] Véase, Alegato de oposición a solicitud de certiorari, pág. 10.

En nuestra casuística no encontramos un precedente que expresa y directamente atienda tal interrogante bajo las mismas circunstancias que enmarcan el caso de epígrafe. Sin embargo, sí hallamos varios casos relacionados a transacciones de personal realizadas en contravención a la legislación vigente y en los cuales negamos reconocer algún derecho sustentado en la actuación ilegal. Ello basado en la norma de que todo acto ejecutado en contra de lo que dice la ley es nulo y, como consecuencia, inexistente e ineficaz porque nunca "nació" en derecho y no genera consecuencia jurídica alguna.[29]

Tomemos, por ejemplo, el caso de Franco v. Municipio de Cidra, 113 DPR 260 (1982) en el que la parte demandante fue designada bajo la categoría de un puesto permanente o de carrera como Directora de Personal del Municipio de Cidra. Según resaltara el Tribunal en aquella ocasión, para el momento de su designación, el Municipio no había cumplido con las disposiciones de la Ley Núm. 5 del 14 de octubre de 1975 (Ley de Personal del Servicio Público) que expresamente le requerían adoptar un reglamento de personal sobre el área esencial del principio de mérito y en el cual se debía contemplar como exentas o como parte del servicio

---

[29] Véase, Art. 4 del Código Civil de Puerto Rico. (31 LPRA sec. 4). ("Son nulos los actos ejecutados contra lo dispuesto en la ley, salvo los casos que la misma ley ordene su validez"). Véase, además, Montañez v. Policía de Puerto Rico, 150 DPR 917, 921 (2000).

de confianza posiciones como la ocupada por la demandante.

Ante ese incumplimiento con la ley, rechazamos el reclamo de permanencia presentado por la demandante. Según razonamos, el reclamo de la parte demandante se basaba en una transacción de personal ejecutada de manera contraria al derecho vigente de entonces, por lo que era improcedente reconocerle algún derecho basado en una actuación que para todos los efectos era nula. Al respecto, expresamos lo siguiente:

> a partir del 14 de octubre de 1976 la entidad municipal debió haber adoptado un reglamento sobre el área esencial del principio de mérito en términos de reclutamiento, clasificación, etc. En la medida en que no lo hizo y continuó gobernándose por la Ordenanza Núm. 66, sus disposiciones y actuaciones, que fueran contrarias e incompatibles con la Ley de Personal, carecían de fuerza legal suficiente para crear y convalidar un puesto y nombramiento de carrera que, esencialmente, era de confianza. **No podemos --así nos hemos negado en el pasado-- refrendar la teoría de que la inacción o ilegalidad de la autoridad municipal pueda ser fuente para reconocer derechos donde no los hay si nacen de una violación de la ley.**[30]

Por otra parte, en <u>Colón v. Alcalde Municipio de Ceiba</u>, 112 DPR 740 (1982), atendimos una situación en que el alcalde nombró al demandante a un puesto de confianza, a pesar de que las tareas asignadas correspondían a un puesto de carrera para el cual debía darse un proceso de libre competencia conforme a la

---

[30] (Énfasis suplido). <u>Franco v. Municipio de Cidra</u>, supra, pág. 262.

legislación de personal. Una vez removido de su puesto, el demandante reclamó las protecciones correspondientes a un puesto del servicio de carrera. Nuevamente, denegamos el reclamo del demandante basado en que la transacción de personal realizada por el empleador había sido contraria a la ley de personal vigente. Cónsono con ello, expresamos que,

> **[d]e pobre valor decisorio, moral y jurídico, sería pautar un remedio erigido sobre la base de la ilegalidad e inobservancia de una ley.** De aplicación al caso de autos es el principio elemental, pero rector, de que '[s]on nulos los actos ejecutados contra lo dispuesto en la ley, salvo los casos en que la misma ley ordene su validez'. Máxime cuando ello atenta contra los valores de orden público plasmados en la Ley de Personal. No cabe extender la protección de la clasificación como empleado de carrera a quien logró tal puesto a base de criterios ajenos a esa categoría.[31]

Con este marco legal como norte, procedemos a evaluar y resolver los méritos de la controversia ante nuestra consideración.

### III

Previo a adjudicar la interrogante ante nos, debemos resaltar que, según reseñáramos en la primera sección de esta Opinión, el presente caso se produce como secuela de nuestra determinación en González Segarra v. CFSE, supra. Así las cosas, y en ánimo de evitar expresiones innecesarias sobre una interrogante jurídica que no está propiamente ante nuestra

---

[31] (Citas omitidas) (Énfasis suplido). Colón v. Alcalde Municipio de Ceiba, supra, pág.746.

consideración, **no** nos proponemos responder si los empleados gerenciales de la CFSE tienen derecho a retener los aumentos por mérito recibidos en tales puestos una vez son reinstalados a un puesto unionado. En su lugar, la única controversia que los hechos del presente caso nos brindan espacio para atender se limita a si un empleado unionado tiene derecho a retener aquellos aumentos por méritos que recibió mientras ocupaba un puesto gerencial que fue obtenido ilegalmente y, como consecuencia, fue declarado nulo.

En ese contexto, la CFSE sostiene que los empleados demandantes no tienen derecho a retener los pasos por mérito reclamados, ya que estos fueron obtenidos mientras ocupaban un puesto gerencial que fue declarado nulo. Los empleados argumentan, por su parte, que tienen un derecho adquirido sobre los pasos por mérito obtenidos, ya que estos formaron parte de su patrimonio. Tanto la Junta de Apelaciones de la CFSE como el Tribunal de Apelaciones en su momento decidieron a favor de los empleados demandantes. No podemos coincidir con ninguno de los dos foros.

En primer lugar, es un hecho incontrovertible que los empleados demandantes sí fueron evaluados y recibieron varios aumentos salariales por pasos por mérito mientras ocupaban sus respectivos nombramientos gerenciales, conforme al proceso delineado en el Sistema

de Evaluación de la CFSE. Tampoco está en controversia que esos nombramientos gerenciales fueron declarados nulos porque fueron realizados ilegalmente, en contravención a la reglamentación de la CFSE y a la legislación vigente de transacción de personal a nivel gubernamental. Como mencionáramos, esta determinación fue confirmada, incluso, por este Tribunal tan reciente como en el 2013 en el caso González Segarra v. CFSE, supra.

En segundo lugar, los pasos por mérito recibidos por los demandantes fueron obtenidos como consecuencia de unas evaluaciones que únicamente podían acceder mediante un puesto gerencial. Es decir, el Sistema de Evaluación de la CFSE es un esquema evaluativo dirigido **exclusivamente** a empleados que ocupen puestos gerenciales de carrera.[32] Por lo tanto, se trata de pasos por mérito que están directamente relacionados al nombramiento gerencial que ostentaban los aquí demandantes y a los cuales **no** hubiesen tenido acceso como empleados de carrera unionados.[33]

A base de lo anterior es difícil concluir – como, en efecto, hizo el Tribunal de Apelaciones - que los

---

[32] Véase Parte II, Sección A de esta Opinión.

[33] Los empleados de carrera unionados reciben aumentos salariales basados en el criterio de años por servicio, según estipulado en el Convenio Colectivo. Véase, Apéndice de la Petición de *certiorari*, *Convenio Colectivo Unión de Empleado de la Corporación del Fondo del Seguro del Estado*, Artículo 43, pág. 594.

empleados demandantes tengan un derecho adquirido sobre unos pasos por mérito que recibieron mientras ocupaban un puesto gerencial que fue declarado **nulo**. Conforme a la normativa reseñada en la sección anterior, los actos nulos son inexistentes, inoficiosos y no generan consecuencia jurídica alguna. Por lo tanto, una vez los puestos gerenciales fueron decretados nulos, tanto el puesto como los beneficios inherentemente atados al mismo, concluyeron y para todos los efectos prácticos nunca existieron. En ese sentido, los demandantes no ofrecen disposición legal alguna que valide que, aún en tales circunstancias de nulidad, tienen derecho a retener los pasos por mérito otorgados.

De esta manera, resolvemos que cuando se decreta la ilegalidad y nulidad de un nombramiento y al empleado le asiste el derecho de reinstalación en su puesto de origen obtenido a base de un nombramiento legítimo previo en el servicio de carrera, este sólo tiene derecho a lo que en ese puesto de carrera hubiera recibido de no haberse dado el nombramiento inoficioso. En otros términos, al empleado se le deberá honrar todos los beneficios a lo que hubiera tenido derecho de haber permanecido en su puesto de carrera. Eso fue, precisamente, lo que hizo la CFSE en el presente caso.

Resolver lo contrario y, como consecuencia, avalar la posición del Tribunal de Apelaciones, implicaría

reconocer derechos producto de actuaciones ilegales y nulas que para todos los efectos jurídicos nunca existieron. Ello, no tan solo sería contrario al principio de mérito imperante en nuestro sistema laboral público, sino que también promovería que las agencias ejecuten transacciones de personal en completa inobservancia a los reglamentos y las leyes vigentes, con el único propósito de beneficiar a algún empleado en particular, el cual al final del día retendría los beneficios obtenidos como consecuencia de un nombramiento ilegal. Ciertamente, no podemos avalar, y mucho menos fomentar, semejante subterfugio jurídico.

**IV**

Por los fundamentos que anteceden, se revoca la Sentencia emitida por el Tribunal de Apelaciones el 24 de febrero de 2014 en el caso KLRA201100826.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Maribel Pérez López, et al.

      Recurridos

         v.

Corporación del Fondo del
    Seguro del Estado

      Peticionario

*Certiorari*

CC-2014-0462

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de diciembre de 2015.

Por los fundamentos expuestos en la Opinión que antecede, los cuales se hacen formar parte de esta Sentencia, revocamos la Sentencia dictada por el Tribunal de Apelaciones el 24 de febrero de 2014 en el caso KLRA201100826.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión Disidente a la que se unió la Jueza Presidenta señora Fiol Matta.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Maribel Pérez López, *et al.* <br><br> Recurridos <br><br> v. <br><br> Corporación del Fondo del Seguro del Estado <br><br> Peticionario | CC-2014-0462 | |

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se une la Jueza Presidenta señora Fiol Matta

San Juan, Puerto Rico, a  11 de diciembre de 2015

> "[N]ulos y de ningún valor ni efecto, ahora ni en tiempo alguno, como si no hubiesen pasado jamás tales actos, y se quitasen de en medio del tiempo . . .".[34]

La controversia ante la consideración de este Tribunal requiere determinar si, una vez un nombramiento gerencial es declarado nulo, el empleado afectado tiene derecho a retener los aumentos salariales por mérito obtenidos durante la tenencia de sus puestos. Tal y como reconoce la Opinión mayoritaria, "en nuestra casuística no encontramos un precedente que expresa y directamente atienda tal interrogante". *Opinión*, en la pág. 14.

---

[34] Real Decreto de Fernando VII derogando la Constitución (Valencia, 4 de mayo de 1814).

Ante la falta de un precedente que resuelva la controversia planteada, una mayoría de este Tribunal opta por aplicar, con un automatismo extremo, los preceptos que rigen la nulidad absoluta en la contratación privada. Al proceder de esta forma, no sólo se reproduce el razonamiento desvariado adoptado en *González Segarra v. CFSE*, 188 D.P.R. 252 (2013), sino que, además, se castiga arbitrariamente a empleados públicos que, en base a criterios de productividad, eficiencia, orden y disciplina, fueron compensados por su desempeño. Por tal razón, estimo oportuno reafirmar mi postura en torno los nombramientos de estos servidores públicos y evaluar los posibles efectos de la nulidad en el contexto particular de este caso.

**I**

Los hechos que subyacen la controversia que hoy resuelve este Tribunal se remontan a la anulación, por parte de la Administradora de la Corporación del Fondo del Seguro del Estado, de 232 nombramientos realizados por medio del uso de convocatorias internas durante los periodos de 2001 a 2004 y de 2005 a 2008. Esta determinación administrativa fue confirmada por este Tribunal en *González Segarra v. CFSE*, *supra*. En ese caso, mediante una interpretación desafortunada del *Reglamento de personal para los empleados gerenciales de la Corporación del Fondo del Seguro del Estado*, se confirmó la nulidad de aquellos nombramientos a puestos gerenciales

realizados en virtud de convocatorias internas. Declarados nulos los nombramientos en cuestión, los empleados fueron reasignados en sus puestos de carrera. No obstante, al ser reinstalados, se les denegó el aumento salarial correspondiente a los pasos por mérito que habían recibido mientras ocupaban los puestos gerenciales anulados.

Insatisfechos con tal denegatoria por parte de la Administradora, los empleados acudieron a la Junta de Apelaciones de la CFSE (Junta). El 6 de julio de 2011, la Junta determinó que, a pesar de la nulidad de los nombramientos, "[e]l aumento salarial recibido como paso por mérito ingresó y formó parte del patrimonio del empleado, surgiendo de ahí en adelante un derecho a continuar recibiéndolo salvo que sea privado por justa causa y cumpliéndose con el debido proceso de ley". *Véase Apéndice*, en las págs. 230-31.

Luego de múltiples trámites procesales, el 24 de febrero de 2014, el Tribunal de Apelaciones confirmó tal determinación, concluyendo que, bajo el estado de derecho vigente al momento de otorgársele los aumentos salariales en concepto de pasos por mérito, los empleados tenían derecho a retener los mismos al ser reubicados a sus puestos de origen. Consiguientemente, el Tribunal de Apelaciones afirmó que los aumentos obtenidos por los empleados mientras ocupaban sus respectivos puestos gerenciales constituían derechos adquiridos que habían ingresado a su patrimonio y formaban parte de éste.

Según se anticipó, la Opinión que hoy suscribe una mayoría revoca tanto la determinación de la Junta de Apelaciones, como el dictamen del Tribunal de Apelaciones. Ese proceder se sostiene, principalmente, ciñendo la controversia a determinar "si un empleado unionado tiene derecho a retener aquellos aumentos por mérito que recibió mientras ocupaba un puesto gerencial que fue declarado nulo". *Opinión*, en la pág. 17. Al enmarcar así la controversia, el análisis de la mayoría se circunscribe a dirimir los efectos jurídicos de la nulidad absoluta sin una evaluación ulterior de la posible atemperación de esa normativa al ámbito del Derecho Público.

Por entender que la controversia ante nuestra consideración requería un escrutinio más riguroso de los intereses involucrados, y por estar convencida de que los nombramientos fueron realizados conforme a Derecho, disiento del dictamen mayoritario. Después de todo, "[u]n sistema de invalidez, construido en un Derecho que encuentra su centro en el problema de la autonomía de los sujetos privados mal se presta a ser aplicado a un Derecho que encuentra su centro en el problema de la dialéctica autoridad-libertad".[35]

**II**

---

[35]Massimo Severo Gianninni, Lezioni di Diritto Amministrativo, Vol I, en la pág. 384 (1950) (*citado en* Fernando Garrido Falla, *Los motivos de impugnación del acto administrativo, Rev. Adm. Púb. No. 19, en la pág. 12* (1955).

El análisis esbozado en la Opinión que hoy suscribe una mayoría de este Tribunal levanta ciertas inquietudes relacionadas con las consecuencias jurídicas que acarrea la nulidad de una actuación administrativa. Tratándose de una situación fáctica singular, en la que 232 empleados públicos confiaron de buena fe en la legalidad y validez de sus nombramientos o ascensos a puestos gerenciales, resulta conveniente matizar las consecuencias jurídicas de la nulidad en esta controversia en particular.

Al unirme a las expresiones disidentes del entonces Juez Presidente señor Hernández Denton, en *González Segarra*, *supra*, asumí la postura de que era inconcebible anular los puestos de trabajo de estos empleados en base a una interpretación en extremo restrictiva de las disposiciones reglamentarias aplicables. La única razón que se adujo, en aquel momento, para decretar la nulidad de los nombramientos en cuestión, fue la falta de cumplimiento con lo que la mayoría interpretó como un requisito técnico insoslayable; específicamente, el uso de una convocatoria abierta. Es decir, en ningún momento se cuestionaron las cualificaciones de los empleados, ni sus ejecutorias mientras ocuparon los puestos anulados. De hecho, los aumentos por mérito que éstos recibieron evidencian que su desempeño fue reconocido como excelente o superior, según lo requerido para la concesión de un aumento salarial por mérito.

Según se desprende de los documentos que obran en el expediente, los empleados recurridos sometieron sus respectivas solicitudes de empleo para competir en los puestos anunciados mediante la convocatoria interna. Asimismo, sus cualificaciones fueron evaluadas por la Oficina de Recursos Humanos y los empleados participaron de un proceso de entrevistas y evaluación que resultó en sus nombramientos. Cabe destacar que, durante este trámite, no hubo indicio alguno de irregularidad y los empleados asumieron sus puestos bajo la premisa de que habían cumplido con todos los requisitos reglamentarios correspondientes. Consiguientemente, luego de cumplir con el periodo probatorio para sus respectivos puestos, los empleados se convirtieron en empleados gerenciales de carrera permanentes. No es hasta el año 2010 -más de nueve años después de la concreción de algunos de estos nombramientos- que los empleados fueron notificados de la nulidad de éstos por la Administradora del CFSE. En aquél momento, conforme a lo señalado por el foro apelativo intermedio, "los recurridos no fueron advertidos por la CFSE de que los aumentos salariales obtenidos mediante pasos por mérito serían eliminados. Tampoco se les proveyó razones para ello, ni vista informal sobre esta acción." *Apéndice* en la pág. 51.

Hoy, una mayoría, acusando un rigor dogmático e invocando los efectos jurídicos de un decreto de nulidad radical, priva injustamente a estos empleados de aumentos

salariales otorgados conforme a Derecho. Según se expone en la Opinión mayoritaria, durante la permanencia en sus respectivos puestos gerenciales, los empleados estuvieron sujetos a los rigores del *Sistema de evaluación y motivación de recursos humanos* adoptado por la CFSE, cuyo objetivo principal fue propiciar el desarrollo de los empleados mediante la utilización de criterios objetivos para evaluar su desempeño. *Véase Corporación del Fondo del Seguro del Estado, Sistema de evaluación y motivación de recursos humanos: Pasos por mérito, personal gerencial de carrera, Apéndice en la pág. 258.* Estos aumentos se dieron en virtud de un reconocimiento a su rendimiento profesional que abarcó criterios de desempeño, liderato, productividad, eficiencia, asistencia, puntualidad y otras aportaciones hechas por los empleados al desarrollo de la corporación.

La incongruencia del razonamiento mayoritario, estriba en la impropiedad de emplear el término "nulidad absoluta", con la significación que a éste se le asigna usualmente en la contratación privada, para concluir que "una vez los puestos gerenciales fueron declarados nulos, tanto el puesto como los beneficios inherentemente atados al mismo, concluyeron y para todos los efectos prácticos nunca existieron". *Opinión*, en la pág. 19. Esta afirmación categórica pasa por alto una realidad innegable: los empleados cuyos puestos fueron declarados nulos, en efecto, ocuparon éstos durante años; generaron los

salarios correspondientes; cumplieron con los deberes y responsabilidades inherentes a éstos, y recibieron, en reconocimiento de sus ejecutorias, aumentos salariales por mérito.[36]

En el pasado, al examinar los efectos de la nulidad en el ámbito del Derecho Público, hemos reconocido que la doctrina civilista contempla supuestos de nulidad parcial como "técnica de pervivencia de un negocio en cuyo contenido fundamental no incide la imputación de su parte nula, o, incidiendo, no impide que el conjunto negocial no afectado perviva con consistencia suficiente". *McCrillis v. Aut. Navieras de P.R.*, 123 D.P.R. 113, 135 (1989) (citas omitidas). Así, por ejemplo, se podría plantear que un decreto de nulidad de una actuación administrativa en particular no necesariamente afecta la existencia y validez de actuaciones posteriores, que bien podrían tener una relación secuencial con la actuación presuntamente nula. Bajo este supuesto, la nulidad del acto inicial no

---

[36] En cuanto a esto, aun en el ámbito del Derecho Privado, Borrell Soler comenta que

> [D]ecir que un contrato es inexistente convida a prescindir de él en absoluto; a prescindir de él como si jamás llegase a tener ninguna influencia en el orden jurídico; como si no pudiere producir efectos; como si no ofreciera peligro alguno. Y, sin embargo, tales contratos inexistentes pueden producir y a menudo producen efectos y pueden perjudicar. Los contratos llamados inexistentes no son fuegos de artificio que alumbran un momento el espacio, para desaparecer inmediatamente, ni son como estatuas de hielo que se deshacen solas.

Antonio M. Borrell y Soler, *Nulidad de los actos jurídicos según el Código Civil español* 8 (1947).

se extendería automáticamente a actos posteriores que se rigen por otro tipo de reglamentación.

Esta distinción entre nulidad completa y nulidad parcial "parte de la premisa de la divisibilidad del contenido del negocio, de sus disposiciones o cláusulas". Eduardo A. Zannoni, *Ineficacia y nulidad de los actos jurídicos* 159 (1986). Asimismo, Garrido Falla destaca que "hay que entender la posibilidad de la nulidad parcial de los negocios jurídicos, lo que supone la validez de aquella parte del negocio que no está afectada de vicio". Fernando Garrido Falla, *Los motivos de impugnación del acto administrativo, Rev. Adm. Púb. No. 19, en la pág.* 12 (1955). En lo que respecta al acto administrativo, Garrido Falla propone que la sanción de nulidad absoluta dispuesta por el Artículo 4 del Código Civil español, equivalente a nuestro Artículo 4, no debe ser de aplicación. Explica que, "cuando la administración actúa, el papel que juega en el Derecho público el tema de las nulidades absolutas tiene que ser necesariamente . . . completamente diferente". *Id.* en la pág. 19.

### III

En este caso, realizar una distinción conceptual entre la nulidad en el ámbito del Derecho Privado y la ineficacia de una actuación administrativa que es declarada nula, conllevaría, a mi entender, reconocerle a los empleados cuyos nombramientos fueron declarados nulos el derecho a retener los aumentos salariales por mérito

obtenidos al amparo de un sistema comprensivo de evaluación de su desempeño. Por entender que los hechos ante nuestra consideración ameritaban tal distinción, confirmaría tanto la determinación administrativa como el dictamen del Tribunal de Apelaciones. Consecuentemente, disiento del proceder mayoritario.


                              Anabelle Rodríguez Rodríguez
                                      Juez Asociada